Paula ANDERSON, Plaintiff—Appellant,

v.

**FRESNO COUNTY, Human Services System, Defendant—Appellee.**

No. 08–15103.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 2009.

Filed June 18, 2009.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Benjamin Robinson, Esquire, Law Office of Benjamin Robinson, Los Angeles, CA, for Plaintiff–Appellant.

Michael G. Wood, Esquire, William Littlewood, Esquire, McCormick, Barstow, Sheppard, Wayte & Carruth, Fresno, CA, for Defendant–Appellee.

Before: B. FLETCHER, HAWKINS and THOMAS, Circuit Judges.

### MEMORANDUM *

Plaintiff Paula Anderson ("Anderson") appeals the grant of summary judgment to the County of Fresno ("the County") on her Title VII claims of racial discrimination, racial harassment, and retaliation. Anderson claims to have suffered a discriminatory demotion in 2003, a discriminatory or retaliatory termination in 2005, racial harassment, and several discriminatory or retaliatory terms and conditions of employment, including reprimands, performance evaluations, a relocation of her desk, and a failure to provide adequate training. We affirm.

After completing a probationary year as a Health Education Assistant ("HEA") with the County, Anderson was promoted to a Health Education Specialist ("HES") position, but then was demoted back to an HEA position approximately one year later due to "poor work performance." Anderson was subsequently terminated for job abandonment on January 6, 2005, when, after a medical leave, she failed to return to work or to apply for additional leave.

Anderson filed two formal charges of discrimination with the California Department of Fair Employment and Housing ("DFEH") and, constructively, with the U.S. Equal Employment Opportunity Commission ("EEOC"). *See E.E.O.C. v. Dinuba Medical Clinic*, 222 F.3d 580, 585 (9th Cir.2000). The first charge claimed she was "denied permanent status as a Health Education Specialist because of [her] race (African–American)." The EEOC issued Anderson a right to sue letter based on that charge and she filed the instant lawsuit on November 10, 2004.

Anderson filed a second pre-complaint questionnaire and charge with the DFEH and EEOC on October 31, 2005 and December 5, 2005, noting her termination and alleging that she was "discriminated against because of [her] race ... and in

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

retaliation for engaging in protected activities." In addition to the two formal charges, Anderson also filed correspondence and two other pre-complaint questionnaires with the DFEH at various times throughout her employment and after her termination.

Anderson has introduced no direct evidence of discriminatory intent in relation to any of her claims. Therefore, Anderson's Title VII demotion claim can only survive summary judgment if she can establish a prima facie case, which requires her to show "(1) that [she] is African–American, a protected class under Title VII; (2) that [she] performed [her] job adequately; (3) that [she] was demoted, an adverse employment action; and (4) that [she] was treated differently than similarly situated [non-African-American] employees who were not demoted." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1031 (9th Cir.2006).

■ Anderson cannot meet the fourth prong of a prima facie case for her demotion claim because she introduced no evidence that similarly situated non-African-American employees were treated more favorably. Although Anderson claims the County held her to a higher standard than non-African-American co-workers by making her serve a second year of probation, Anderson introduced no evidence regarding whether her co-workers were also members of Anderson's protected class, whether they were similarly situated in all material respects, and whether she alone was required to serve a second year of probation. The district court therefore did not err by granting summary judgment on Anderson's demotion claim.

■ Anderson's termination claims also fail because she never amended her complaint to allege a discriminatory or retaliatory termination and never gave notice to the County during discovery that she intended to litigate any termination-related claims. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir.2000). Although Anderson's second administrative charge did mention the termination, that alone is not sufficient to have put the County on notice that it would need to defend against claims pertaining to Anderson's termination.

■ Further, Anderson failed to exhaust her racial harassment claim because her administrative charges alleged no specific instances of harassment of a racial nature. A plaintiff's civil action is limited to those acts of discrimination or new acts occurring during the pendency of the charge before the administrative body that are "like or reasonably related to" the allegations in the administrative charge. *Oubichon v. North Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973); *see also Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) (explaining, in closely-related ADEA context, the circumstances in which intake questionnaires may be construed as charges). Although Anderson alleged "verbal expressions of discrimination," including being told she "should not have been hired," and being subjected to a "stressful environment," neither verbal expressions of this type nor a generally "stressful environment" constitute racial harassment actionable under Title VII. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir.2003) (racial harassment involves a plaintiff being "subjected to verbal or physical conduct of a racial . . . nature").

■ Although Anderson's first administrative charge failed to allege specific incidents of discriminatory terms and conditions of employment, it did reference examples on file with the DFEH and state generally that Anderson was "held to a

higher level of performance than [her] non-African American co-workers," was forced, in one instance, to work eight days when her non-African-American co-workers were not, and was set up to fail. Administrative charges are to be construed "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1100 (9th Cir.2002) (citation omitted). Therefore, Anderson's administrative charge, liberally construed, may have exhausted some of Anderson's discriminatory "terms and conditions" claims.

Even were we to assume without deciding that these claims were exhausted, however, summary judgment was nevertheless properly granted because Anderson failed to introduce sufficient evidence that similarly-situated non-African-American co-workers were treated differently in the relevant terms or conditions of their employment. Taken alone, a party's bare allegations are not sufficient to survive summary judgment when, as here, the party cannot claim firsthand knowledge regarding whether others in similar positions received similar treatment with regard to the challenged conduct (i.e., performance standards, training, or disciplinary actions).

▮ Even were we to assume that Anderson exhausted her retaliation claims because the claims were "reasonably related" to her first administrative charge, *see Bowman v. Block,* 940 F.2d 1211, 1229 (9th Cir.1991), Anderson failed to establish a prima facie case to support the retaliation claims because she introduced insufficient evidence that a "causal link" between her decision to file the charge and the adverse employment actions existed. *Porter v. Cal. Dep't of Corr.,* 419 F.3d 885, 894 (9th Cir.2005).

For these reasons, the grant of summary judgment to the County on all of Anderson's claims is affirmed.

**AFFIRMED.**